UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| VULCANIZE, INC., | : | |
| Plaintiff, | : | 21 Civ. _____ |
| - against - | : | COMPLAINT |
| BRANEFRAME, INC., RICH BURDON, MARCUS RYU, and WIRELINE, INC., | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Vulcanize, Inc., by its attorneys identified below, for its complaint against defendants Braneframe, Inc., Rich Burdon, Marcus Ryu, and Wireline, Inc., alleges and states as follows:

**Nature of the Action**

1. This is an action for intentional copyright infringement, for unfair competition, for unjust enrichment, for conversion, and for breach of contract. The action seeks (a) to recover damages for copyright infringement in the form of lost profits in an amount to be determined, together with statutory damages and attorney's fees and costs as provided by statute and if applicable, (b) preliminary and permanent injunctive relief to restrain defendants from infringing plaintiff's registered copyrights, (c) to recover such damages as may be warranted for unfair competition, (d) to recover damages in the amount of approximately $300,000 for unjust enrichment, (e) to recover damages in the amount of approximately $300,000 for conversion, and (f) to recover damages in the amount of approximately $300,000 for breach of contract.

2. The claims arise from defendants' intentional infringement of plaintiff's copyrighted work, as more particularly described below, and from a relationship between plaintiff and the individual defendants and the defendant Wireline, Inc., which contracted with plaintiff.

## Jurisdiction

3. The jurisdiction of this Court over the action rests upon:

(a) 28 U.S.C. §1331 (federal question)—in that the action arises under the laws of the United States;

(b) 28 U.S.C. §1338(a) (copyrights)—in that the action arises under an Act of Congress relating to copyrights;

(c) 28 U.S.C. §1367 (supplemental jurisdiction)—in that the common law claims that are set forth in this complaint are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution; and

(d) 28 U.S.C. §1332(a)(2) (diversity)—in that there is complete diversity of citizenship between plaintiff and one of the defendants, who are respectively a citizen of a state other than the state of residence of that defendant, and a citizen or subject of a foreign state lawfully residing in the United States, and the amount in controversy, without interest or costs, exceeds the sum or value specified by 28 U.S.C. §1332(a).

## Parties

4. Plaintiff Vulcanize, Inc. ("Vulcanize"), is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business located in San Francisco, California.

5. Defendant Braneframe, Inc. ("Braneframe"), is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business located in New York, New York.

6. Defendant Rich Burdon ("Burdon") is a citizen or subject of the United Kingdom lawfully residing in Brooklyn, New York.

2

7. Defendant Marcus Ryu ("Ryu") is a citizen of the State of California residing in San Francisco, California.

8. Defendant Wireline, Inc. ("Wireline"), is a corporation duly organized and existing under the laws of the State of Delaware that maintained or maintains a principal place of business located in New York City, New York.

**Facts**

9. Plaintiff Vulcanize is a consultancy whose focus is the development of complex and novel software systems. Among other things, Vulcanize designs and advises on the development of complex systems using blockchain technology.

10. Vulcanize is the exclusive owner of all right, title, and interest in the following federally-registered copyrights (the "Copyrighted Work"), attached together as Exhibit A:

    a. WPS Quick Spec, Registration Number TX 8-966-577;

    b. Wireline Whitepaper, Registration Number TX 8-966-579;

    c. Vulcanize–Wireline Registry Mechanism, Registration Number TX 8-966-581;

    d. Wireline Payments Network, Registration Number TX 8-966-588;

    e. Wireline Issuance, Registration Number TX 8-966-600;

    f. Wes Notes, Registration Number TX 8-966-603;

    g. Vulcanize Design Mechanism, Registration Number TX 8-966-608;

    h. Introduction to the Wireline Network Mechanism and Economics, Registration Number TX 8-966-613;

    i. Critical Path Proposals for DxOS, Registration Number TX 8-966-617.

11. Defendant Burdon was formerly the chief executive officer and majority owner of the shares of a corporation known as Wireline, Inc. ("Wireline").

12. Defendant Ryu worked in some capacity with Wireline or with Burdon.

13. Wireline is a corporation duly organized and existing under the laws of the State of Delaware. It was formed on or about December 8, 2017, and had its principal place of business in New York, New York.

14. Wireline publicly described itself as an early-stage company focused on the development of a decentralized, blockchain-based platform for "microservices" applications. As alleged below, Wireline unlawfully offered and sold securities—in the form of simple agreements for future tokens (or SAFTs)—that were not registered in accordance with the U.S. federal securities laws. Wireline also proposed and promised to use such tokens as consideration for services it required and for which it contracted.

15. Wireline Developer Fund Ltd., a/k/a Wireline Developer Fund ("Wireline Developer Fund") is a Cayman Islands entity formed in 2017 and a wholly-owned subsidiary of Wireline. Wireline Developer Fund was formed for the purpose both of distributing the Wireline tokens and encouraging the utilization of tokens in the Wireline platform or marketplace.

16. Defendants Burdon and Ryu are the co-founders and owners of defendant Braneframe.

17. By three separate written advisory services agreements (collectively, the "Advisory Services Agreements"), respectively dated July 24, 2018, June 25, 2019, and April 16, 2020, Vulcanize and Wireline entered into and memorialized an advisory relationship for the purpose of Vulcanize providing system architecture and design services to Wireline. The first two such agreements were executed by the parties; the third was unexecuted but the parties nonetheless

conducted business in accordance with its terms.  Each agreement amended and restated the preceding agreement.  The agreements are attached hereto, respectively, as Exhibits B, C, and D.  Each of the Advisory Services Agreements contained identical (or virtually identical) standard terms and conditions and an Exhibit A (stipulating compensation) that were expressly incorporated made part of each agreement.

18. Under the July 24, 2018 advisory services agreement, the parties described the specific services that Wireline required of Vulcanize as follows:

> Advisor shall be responsible for advising Client on the token mechanism design for the Wireline platform. Advisor shall perform the Advisory Services through Principal for up to 5 hours.
>
>     \*      \*      \*
>
> Deliveries under this Agreement are to be made to a public GitHub repo licensed with GPLv3, BSD, MIT or equivalent.

19. Under the June 25, 2019 advisory services agreement, the parties described the specific services that Wireline required of Vulcanize as follows:

> Advisor shall be responsible for advising, assisting and supporting Client on the design of the Wireline Network, Wireline Decentralized Registry, and other Wireline Products, including mechanism design consulting and systems architecture consulting. Mechanism design consulting includes design of BFT protocols, network specifications, token economies, consensus mechanisms, governance mechanisms, and positive/negative incentives. Systems architecture consulting includes sidechain technical architecture, payments scaling solutions, token exchange, two-way pegs, and atomic swaps.
>
>     \*      \*      \*
>
> "Deliverables" as defined under Section 3 of the Standard Terms and Conditions of this Agreement include without limitation a mechanism requirements document, a detailed technical design, a mechanism white paper for external peer review, and ongoing consulting with technical teams. Deliveries under this Agreement

>are to be made to a public GitHub repo licensed with GPLv3, BSD, MIT or equivalent.

20.    Under the April 16, 2020 advisory services agreement, the parties described the specific services that Wireline required of Vulcanize as follows:

>Advisor shall be responsible for advising, assisting and supporting Client on the design of the Wireline Network, Wireline Name Service, and other Wireline Products, including mechanism design consulting, systems architecture consulting, and other works. Mechanism design consulting includes design of BFT protocols, network specifications, token economies, consensus mechanisms, governance mechanisms, and positive/negative incentives. Systems architecture consulting includes sidechain technical architecture, payments scaling solutions, token exchange, two-way pegs, and atomic swaps. Other works includes Development of the Wireline and DxOS systems, management of developers, whitepaper and other forms of non-proprietary writing as needed.

21.    Under paragraph 5 of the Standard Terms and Conditions incorporated and made a part of each of the Advisory Services Agreements, the parties covenanted that "(a) None of the rights (including any copyrights) and title to Deliverables under this Agreement shall be considered works made for hire, whether Deliverables are in digital or tangible form, and regardless of the medium in which Deliverables are expressed."

22.    Under the Advisory Services Agreements, Vulcanize would be compensated for providing its services and its deliverables in several ways.

23.    Under the July 24, 2018 (Ex. A) advisory services agreement, Vulcanize was to be compensated by cash payments for the work of its principal at an hourly rate of $480 per hour.

24.    Under the June 25, 2019 (Ex. B) advisory services agreement, Vulcanize was to be compensated by cash payments for the work of its principal at an hourly rate of $480 per hour, but half of such compensation was to be deferred and paid through deferred compensation in the form

of ERC20-compliant tokens, a form of crypto asset, to be delivered at the "Token Genesis Event," described in the agreement as Wireline's issuance and sale of such tokens using the Ethereum blockchain network. Additionally under this agreement, Wireline granted Vulcanize deferred compensation in the amount of $75,000, also in the form of tokens.

25. Under the April 16, 2020 advisory services agreement (Ex. C), Vulcanize was to be compensated by a monthly fee of $32,000, consisting of $16,000 in cash and $16,000 in deferred compensation in the form of tokens, as described under the June 25, 2019 agreement.

26. Notwithstanding the foregoing, if Wireline terminated either of the last two Advisory Services Agreements without cause, Vulcanize at its sole election could demand cash payment equivalent to the tokens then due.

27. Vulcanized duly performed the services described in and required by the April 16, 2020 advisory services agreement and by the preceding two Advisory Services Agreements except as excused by act or omission of Wireline.

28. Between January and September 2018, Wireline conducted a multi-phase securities offering through which it raised over $16.3 million (the "Offering") from public investors. Specifically, Wireline offered and sold securities in the form of investment contracts when it offered and sold digital assets through simple agreements for future tokens ("SAFTs"). The SAFTs provided that upon the public release of Wireline's marketplace, Wireline would distribute those digital tokens to its investors, who were counterparties to the SAFTs.

29. Wireline represented to investors that invested funds would be used to develop the Wireline microservices platform and that the tokens would be used as the means of exchange between software developers and end-users on Wireline's marketplace. The securities offering was not registered pursuant to the federal securities laws, and the offer and sale did not qualify for an

exemption from securities registration requirements.  Wireline never distributed the digital tokens to investors.

30. On January 15, 2021, the U.S. Securities and Exchange Commission ("SEC") entered an order against Wireline instituting cease-and-desist proceedings pursuant to Section 8(a) of the Securities Act of 1933, 15 U.S.C. §77a *et seq*. (the "Securities Act"), making findings, and imposing penalties on and a cease-and-desist order against Wireline.  A copy of the order is attached to this complaint as Exhibit E.

31. In brief, the SEC found that Wireline had violated Section 5(a) and Section 5(c) of the Securities Act by offering and selling securities without a registration statement filed or in effect with the SEC or qualifying for an exemption from registration, and had violated Sections 17(a)(2) and (3) of the Securities Act—its antifraud provisions—with respect to the offering by making materially false and misleading statements about the viability of its platform and the timetable for the issuance of its tokens.  It based the latter finding on its conclusion that:

> [i]n connection with its securities offering, Wireline falsely asserted that more than 100 developers were publishing applications to its marketplace, that its platform had been functioning in "private beta" for more than nine months, and that the token distribution was imminent.  These statements materially misrepresented Wireline's functionality and progress, and more than two years since it made these statements, Wireline's platform has not launched.

32. The SEC accordingly entered a cease-and-desist order directing Wireline to cease its acts and omissions violative of the federal securities laws, to pay a civil penalty in the amount of $650,000 to be used for the creation of a "Fair Fund" under Section 308(a) of the Sarbanes-Oxley Act of 2002, to notify its investors of its violations of law, to notify investors that it would not distribute tokens pursuant to the SAFTs investors held, and to provide notice of the SEC order on its website.

33. Wireline's serious wrongdoing—its unlawful conduct under federal law—effectively put an end to its business. Wireline ceased active business operations at some time in the Spring of 2021, and authorized the filing of a certificate of dissolution with the Delaware Secretary of State on March 26, 2021.

34. Having ceased to operate as an active business, Wireline effected the termination or constructive termination of the then-governing advisory services agreement or agreements between it and Vulcanize without cause, and triggered Vulcanize's right to demand payment of compensation, either current or deferred, in cash.

35. At that time, Wireline was indebted to Vulcanize in the amount of approximately $300,000. Despite due demand upon Wireline that it pay that amount to Vulcanize in cash, Wireline has failed and refused to make that payment.

36. Wireline has also stated that it operated under a cost-plus service contract with the Cayman entity, Wireline Developer Fund, and that the latter held all assets and paid Wireline for Wireline's services.

37. Wireline has further stated and represented that Wireline Developer Fund was the recipient of the proceeds of the unlawful securities offering described above, and that Wireline Developer Fund is currently in a court-ordered Cayman Islands dissolution proceeding.

38. According to Wireline's representatives, it is without assets sufficient to pay its creditors.

39. On March 24, 2021, defendants Burdon and Ryu incorporated or caused to be incorporated the Delaware corporation called Braneframe.

40. Braneframe describes itself on LinkedIn as "a Web3 company building peer-to-peer privacy-preserving applications on open-source protocols, most importantly a fully

9

decentralized database," and claims to be "a leading project in the DXOS (Decentralized Operating System) ecosystem, whose participants are working toward an alternative to the tech giant-dominated public cloud."

41. Under the Advisory Services Agreements, the architecture and design work, together with associated software, performed by Vulcanize for Wireline was to be "open-source," and delivery was to be made to a publicly accessible, open-source software repository (repo) known as GitHub.

42. In software development parlance affecting the GitHub repo, a "commit," or "revision" is an individual change to a file (or set of files). The commit creates a unique ID (a/k/a the "HA" or "hash") that keeps a record of what changes were made when, and by whom they were made.

43. Work committed to a public, open-source repository, may be used, copied, and modified despite registered copyright, subject to certain conditions stipulated in licenses applicable under the repo.

44. In the Advisory Services Agreements, Wireline and Vulcanize stipulated that the licenses permitting use, copying, and modification of the Vulcanize work were to be "GPLv3, BSD, MIT or equivalent."

45. Vulcanize duly delivered the "deliverables" called for in the Advisory Services Agreements. Among those deliverables were the copyrighted materials, or the Copyrighted Work, described above in paragraph 10 of this complaint.

46. Wireline, as well as defendants Burdon and Ryu, through their association with Wireline, had access to the Copyrighted Work.

47. Defendant Braneframe had access to the Copyrighted Work through its association with defendants Burdon and Ryu.

48. Defendants Burdon and Ryu, on behalf of defendant Braneframe, modified portions of the architecture and design developed by Vulcanize, together with associated software code, in the public GitHub repository, to disguise its source and distinguish it from the work originally designed by Vulcanize. The work is not attributed to Vulcanize.

49. Defendants Burdon, Ryu, and Braneframe made such revisions without Vulcanize's authorization, consent, or knowledge and without payment to Vulcanize.

50. The Advisory Services Agreements express or imply a promise that Wireline, and accordingly its owners and persons acting under it, such as Burdon and Ryu, would not access or use the Copyrighted Material, including all materials deposited in the GitHub repo pursuant to such agreements, without appropriately compensating Vulcanize.

51. Defendants Burdon, Ryu, and Braneframe are using the design, architecture and coding, including the Copyrighted Work, developed by Vulcanize in connection with the business and activities of Braneframe and in other contexts. This use has benefitted those defendants at the expense of Vulcanize.

**FIRST CLAIM FOR RELIEF**
**As Against Braneframe, Burdon, and Ryu**
**(Intentional Copyright Infringement—Damages)**

52. Plaintiff Vulcanize repeats and realleges here the allegations of the foregoing paragraphs of this complaint as if fully set forth at length.

53. The Copyrighted Work is an original work containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, *et. seq*.

54. Plaintiff is the exclusive owner of rights under copyright in and to the copyrighted work and owns a valid copyright registration for the Copyrighted Work.

55. By reason of the foregoing, including the reproduction and use of the Copyrighted Work or derivatives thereof, defendants Braneframe, Burdon, and Ryu have violated 17 U.S.C. §501 and have injured Vulcanize.

56. Defendants' conduct was and continues to be willful and with full knowledge of plaintiff's rights in the Copyrighted Work.

57. Vulcanize is entitled to recover of these defendants such damages, including lost profits, license fees, and statutory damages, together with attorney's fees and costs, as are authorized under 17 U.S.C. §§504 and 505.

## SECOND CLAIM FOR RELIEF
### As Against Braneframe, Burdon, and Ryu,
### (Intentional Copyright Infringement—Injunctive Relief)

58. Plaintiff Vulcanize repeats and realleges here the allegations of the foregoing paragraphs of this complaint as if fully set forth at length.

59. By reason of the foregoing, defendants Braneframe, Burdon, and Ryu have violated 17 U.S.C. §501, have injured Vulcanize, and are continuing to violate that statute to Vulcanize's continuing injury.

60. Defendants will persist in such unlawful conduct unless enjoined by this Court.

61. By reason of these defendants' continuing injury, Vulcanize has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

62. Vulcanize is entitled to preliminary and permanent injunctive relief restraining and enjoining these defendants' ongoing infringing conduct, including without

limitation, editing the materials in the GitHub repo so as to make their attribution to Vulcanize plain, and otherwise.

### THIRD CLAIM FOR RELIEF
### As Against Braneframe, Burdon, and Ryu
### (Unfair Competition)

63. Plaintiff Vulcanize repeats and realleges here the allegations of the foregoing paragraphs of this complaint as if fully set forth at length.

64. The foregoing conduct on the part of these defendants evidences bad faith in that such defendants, having been acting under or in connection with a contract with Vulcanize, have deliberately breached that contract and appropriated to themselves the fruits of that contract created by Vulcanize while failing and refusing to pay for such fruits.

65. These defendants' conduct was accordingly in bad faith.

66. By reason of the foregoing, these defendants have engaged in unfair competition, to Vulcanize's injury and harm.

67. Vulcanize is entitled to recover damages for such wrongful acts.

### FOURTH CLAIM FOR RELIEF
### As Against Braneframe, Burdon, and Ryu
### (Unjust Enrichment)

68. Plaintiff Vulcanize repeats and realleges here the allegations of the foregoing paragraphs of this complaint as if fully set forth at length.

69. There was and there is no express contractual relationship between Vulcanize and Burdon, Ryu, of Braneframe.

70. By diverting plaintiff's software architecture and design code to their use, defendants have acted unlawfully, inequitably, and unfairly.

71. These defendants have acted to enrich themselves, and in doing so have appropriated and arrogated themselves and for their personal use property that does not belong to them but that belongs to Vulcanize.

72. The architecture and design that Braneframe is now using was the result of Vulcanize's efforts, and Vulcanize has not been compensated therefor.

73. Accordingly, this enrichment was at plaintiff's expense.

74. Equity and good conscience militate against permitting defendants to retain such enrichment.

75. Plaintiff is accordingly entitled to recover such enrichment from these defendants in an amount to be determined by the trier of fact but no less than the amount of $300,000, representing the amount by which defendants have been enriched.

### FIFTH CLAIM FOR RELIEF
### As Against Braneframe, Burdon, and Ryu
### (Conversion)

76. Plaintiff Vulcanize repeats and realleges here the allegations of the foregoing paragraphs of this complaint as if fully set forth at length.

77. In appropriating and arrogating to their use the property of Vulcanize, these defendants committed the tort of conversion.

78. Vulcanize is entitled to appropriate damages therefor.

### SIXTH CLAIM FOR RELIEF
### As Against Wireline
### (Breach of Contract)

79. Plaintiff Vulcanize repeats and realleges here the allegations of the foregoing paragraphs of this complaint as if fully set forth at length.

80. By reason of the foregoing, defendant Wireline breached the Advisory Services Agreements.

81. Vulcanize has been injured by such breach and is entitled to recover damages therefor.

WHEREFORE, plaintiff Vulcanize demands judgment for such money damages as the Court or the trier of fact may find proven, for such preliminary and permanent injunctive relief as the Court may deem warranted, and for a constructive trust with respect to property of plaintiff being used by defendants, together with appropriate prejudgment interest and the costs and disbursements of this action.

Dated: Cornwall-on-Hudson, New York
       July 28, 2021

                              KARLINSKY LLC

                              By: /s/ Martin E. Karlinsky
                                  Martin E. Karlinsky, Esq.
                                  Bonnie H. Walker, Esq.
                              103 Mountain Road
                              Cornwall-on-Hudson, New York 12520
                              (646) 437-1430
                              martin.karlinsky@karlinskyllc.com
                              bonnie.walker@karlinskyllc.com

                              *Attorneys for Plaintiff*