## ADVISORY SERVICES AGREEMENT (Open Source)

This Advisory Services Agreement ("Agreement") is between __Wireline, Inc.____ ("**Client**") and Vulcanize, Inc., a Delaware corporation ("**Advisor**").

## RECITALS

A.    WHEREAS Client is in the business of decentralized software system development.

B.    WHEREAS Client wishes to retain Advisor to provide the advisory services of its principal, Rick Dudley ("**Principal**"), regarding _the design and development of a token mechanism (mechanisms) to support the Wireline network_ (the "**Advisory Services**").

## AGREEMENT

In consideration of the promises the parties have made to one another and intending to be legally bound, they agree as follows:

1.  **Advisory Services**. Advisor shall be responsible for advising Client on the token mechanism design for the Wireline platform. Advisor shall perform the Advisory Services through Principal for up to _____**5**___ hours. Advisor shall not be required to perform more than __5___ hours of Advisory Services. However, Advisor may perform more than _**5**_____ hours of Advisory Services in its discretion if requested by Client in writing and, in such event, Client shall compensate Advisor for such Advisory Services performed. The Advisory Services shall be performed remotely. Deliveries under this Agreement are to be made to a public GitHub repo licensed with GPLv3, BSD, MIT or equivalent.

2.  **Effective Date**. This Agreement shall become effective 7/24/2018_ (the "**Effective Date**").

3.  **Compensation and Payment**. Client shall compensate Advisor and pay for the Advisory Services as provided in Exhibit A.

4.  **Incorporation of Standard Terms and Conditions.** This Agreement consists of this [two] page agreement and the Standard Terms and Conditions, which are incorporated by this reference and made a part of this Agreement.

5.  **Notices.** Any notices pertaining to this Agreement or the Advisory Services performed under this Agreement shall be in writing, shall be sent via hand delivery, nationally recognized overnight courier service, certified or registered mail, or electronic mail, shall be effective upon receipt, and shall be addressed as set forth below:

| **Advisor:** | **Client:** |
|---|---|
| Vulcanize, Inc. | Wireline |
| 244 Fifth Avenue, #D281 | 270 Lafayette St. |
| New York, NY 10001 | Suite 1204 |
| **Email:** rick@vulcanize.io | **Email:** [lucas@wireline.io] |

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed by their duly authorized representatives as of the Effective Date.

| **CLIENT** | **ADVISOR** |
|---|---|
| **Wireline, Inc.** | **Vulcanize, Inc.** |
| By: *Lucas Geiger* | By: *R. Frederick Dudley* |
| **Lucas Geiger, President** | Rick Dudley, President |
| Date: Jul 24, 2018 | Date: Jul 28, 2018 |

IDETROIT\000136876\0003\1846033.v3-4/2/18

## STANDARD TERMS AND CONDITIONS

1. **Term of Agreement; Termination**. The term of this Agreement shall begin as of the Effective Date and shall continue until: (a) terminated by either party immediately for cause, if the complaining party first notifies the other party in writing and allows a reasonable opportunity, not to exceed ten days, for cure; (b) terminated by either party without cause upon 30 days prior written notice (the "**Notice Period**"), which termination notice may be withdrawn by the terminating party within the Notice Period; or (c) upon completion of the Advisory Services. Client shall pay Advisor for any Advisory Services performed through the effective date of termination.

2. **Independent Advisor**. The relationship created by this Agreement is that of independent contractors and nothing in this Agreement shall be construed as constituting Advisor an employee or agent of Client for any purpose. In addition, this Agreement shall not be construed as creating any employment relationship, partnership or joint venture between Advisor and Client. Advisor shall be responsible for all life, health or disability insurance; federal, state or local withholding taxes; unemployment insurance benefits; social security; worker's compensation and similar expenses and/or deductions based on performance of the Advisory Services for Client.

3. **Deliverables; Delivery**. Under this Agreement, Advisor may prepare and periodically deliver to Client certain software, writings, reports, analyses, models, pictorial diagrams, charts, etc., either in tangible or digital form (collectively "Deliverables"). No Deliverables or any related documents, whether tangible or digital, as prepared by Advisor under this Agreement shall become the property of Client. Delivery under this Agreement means delivery to the authorized contact or delivery location identified in this Agreement. Client may upon reasonable prior notice: (a) replace its authorized contact, (b) cancel or reschedule a delivery date, or (c) change the delivery location. If deliveries under this Agreement are made to a private location, Advisor shall maintain the confidentiality of any such Deliverables until the earlier of: (i) one year from the Effective Date; or (ii) the date Client makes such Deliverables available to the public, whether in connection with a token sale or otherwise.

4. **Confidentiality; Proprietary Rights**. (a) As used in this Agreement, "Confidential Information" means any confidential or proprietary information identified in writing as confidential or proprietary that is disclosed by either party (the "**Disclosing Party**") to the other party (the "**Receiving Party**") during the term of this Agreement, whether of a technical, business, or other nature (including, without limitation, writings, trade secrets, know-how and information relating to technology, business plans, promotional and marketing activities, finances and other business affairs of the Disclosing Party). Confidential Information will be marked as such and may be in digital form or contained in tangible materials, such as writings, drawings, models, data, specifications, reports, compilations and computer applications. Confidential Information shall not be: (i) information already known to the Receiving Party, (ii) information in, or that becomes in, the public domain, or (iii) information acquired by the Receiving Party from a third party entitled to disclose such information. The Receiving Party agrees to maintain the confidentiality of information designated by the Disclosing Party as confidential in the manner provided in this Section 4, during and after the term of this Agreement.

(b)     None of the Deliverables shall become the property of Client and Advisor may, in its discretion, make all Deliverables available to the public at the time provided in Section 3.

(c)     Nothing in this Agreement shall be construed as granting, either expressly or by implication, estoppel or otherwise: (i) any license to Client regarding any patent, trademark, copyright or other intellectual property now or later owned or controlled by Advisor; or (ii) any license to Advisor regarding any patent, trademark, copyright or other intellectual property now or later owned or controlled by Client.

(d)     The provisions of this Section 4 shall survive the termination of this Agreement or the completion of Advisory Services under this Agreement.

5. **Copyrights**. (a) None of the rights (including any copyrights) and title to Deliverables under this Agreement shall be considered works made for hire, whether Deliverables are in digital or tangible form, and regardless of the

medium in which Deliverables are expressed. To the extent that any Deliverable may by operation of law become works made for hire, the author of such Deliverable shall apply a license to it so that such Deliverable shall be accessible to the public. The authors of any such Deliverable shall execute and permit Advisor to file all documents reasonably necessary to enable the public to access such Deliverable at the time provided in Section 3, whether such filing is made in the United States of America, its territories and possessions, or elsewhere in the world.

(b)      Each party agrees that the other party would be irreparably harmed by such party's breach of this Section 5 or Sections 4 (Confidentiality; Proprietary Rights) or 6 (Patents).

(c)      The provisions of this Section 6 shall survive the termination of this Agreement or the completion of Advisory Services under this Agreement.

6. **Patents.** To the extent that any Deliverable or other invention created solely or jointly by Advisor in connection with the Advisory Services (whether or not reduced to writing or other tangible form) may be patentable, neither Client nor Advisor will take any steps to file and prosecute any applications for patents for such Deliverable or other invention in the United States or elsewhere. The provisions of this Section 6 shall survive the termination of this Agreement or the completion of Advisory Services.

7. **Warranties.** (a) Advisor makes the following ongoing representations and warranties as may be applicable to the Advisory Services: (i) it has the right and authorization to enter into this Agreement and its performance of this Agreement will not violate the terms of any contract, obligation, law, regulation or ordinance to which it is subject; (ii) no claim, lien, or action exists or is threatened against Advisor that would interfere with Client's rights under this Agreement; (iii) Advisory Services performed by Advisor will be of reasonable professional standards and quality; (iv) to Advisor's knowledge, Deliverables and Advisory Services do not infringe any privacy, publicity, reputation or intellectual property right of a third party; and (v) all authors have agreed not to assert their moral rights (personal rights associated with authorship of a work under applicable law) in the Deliverables, to the extent permitted by law. If Deliverables or the Advisory Services do not comply with the warranties in this Agreement, Advisor will repair or replace Deliverables or re-perform Advisory Services, without charge and in a timely manner.

(b)      Client makes the following ongoing representations and warranties: (i) it has the right and authorization to enter into this Agreement and its performance of this Agreement will not violate the terms of any contract, obligation, law, regulation or ordinance to which it is subject; (ii) no claim, lien, or action exists or is threatened against Client that would interfere with Advisor's rights under this Agreement; (iii) the person executing and delivering this Agreement on behalf of Client has all necessary power and authority to legally bind the Client to the terms and conditions of this Agreement.

(c)      The provisions of this Section 7 shall survive the termination of this Agreement or the completion of Advisory Services under this Agreement.

8. **Liability.** IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY SPECIAL, CONSEQUENTIAL, INDIRECT, INCIDENTAL OR PUNITIVE DAMAGES, LOST PROFITS, OR FOR ANY CLAIM OR DEMAND MADE BY ANY THIRD PARTY, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. The provisions of this Section 8 shall survive the termination of this Agreement or the completion of the Advisory Services under this Agreement.

9.      **Entire Agreement; Modification; Severability**. Each party acknowledges that it has not been induced to enter into this Agreement by any representations or statements, oral or written, not expressly contained in this Agreement or expressly incorporated by reference. Neither party may assign its rights or delegate its obligations under this Agreement without the other party's prior written consent, except to the surviving entity in a merger or consolidation in which it participates or to a purchaser of all or substantially all of its assets, so long as such surviving entity or purchaser shall expressly assume in writing the performance of all of the terms of this

Agreement. Notwithstanding the preceding sentence, Client shall have the right to assign its rights and obligations under this Agreement to an entity (including a foundation) for the purpose of such entity engaging in a token sale or otherwise making the Deliverables available to the public. All rights and obligations of the parties are personal to them. This Agreement is not intended to benefit, nor shall it be deemed to give rise to, any rights in any third party. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts of laws principles. Any litigation relating to this Agreement shall be conducted exclusively in state or federal courts in New York, New York, and the parties consent to jurisdiction by such courts. The prevailing party in any proceeding (including, without limitation, arbitration or litigation) shall be entitled to recover all reasonable expenses of the proceeding or any appeal, including attorneys' fees. A party's failure to require performance by the other party of any provision of this Agreement shall not affect the right to require full performance at any later time, nor shall the waiver by either party of a breach of any provision of this Agreement be taken or held to be a waiver of the provision itself. If any provision of this Agreement is held by a court of competent jurisdiction to be contrary to law, such provision shall be changed and interpreted so as to best accomplish the objectives of the original provision to the fullest extent allowed by law and the remaining provisions of this Agreement shall remain in full force and effect. This Agreement constitutes the entire agreement between the parties with respect to its subject matter and supersedes any prior written or verbal agreement between the parties with respect to such subject matter. Any amendments to this Agreement must be in writing and executed by the party against whom such provision is to be enforced. This Agreement may be executed in two or more counterparts, each of which constitutes an original, but all of which together constitute one and the same instrument. This Agreement (and any amendment) may be delivered by exchange of electronic signatures of the parties transmitted by facsimile, electronic mailing of portable data files or a recognized digital transaction platform, and any such delivery shall have the same effect as delivery of originally executed signatures.

**EXHIBIT A**
**Compensation**

As full compensation for the Advisory Services, Client shall pay Advisor cash compensation, equity compensation and tokens as follows:

1. *Cash Compensation.*

   a. Client shall pay Advisor on an hourly basis at the rate of **$480** per hour. Advisor shall invoice Client monthly. Each invoice shall be payable upon receipt and shall be paid in full monthly. Unless otherwise directed by Advisor in writing, all monetary compensation for the Advisory Services shall be remitted to Advisor in United States Dollars.

   b. Upon execution and delivery of this Agreement and prior to the performance of any Advisory Services, Client shall pay to Advisor a **$2400** retainer. Such retainer shall be held by Advisor and applied to Client's final invoice. If the amount of the final invoice is less than the retainer, the balance shall be returned to Client, and if the amount in the final invoice is greater than the retainer, the difference shall be paid by Client to Advisor upon receipt of the final invoice.